No. 90-508

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

BYRON C. KELLER,

    Plaintiff, Respondent and Cross-Appellant,

-v-

THOMAS A. DOOLING, MARGARET L.
DOOLING, and ANN DOOLING,

    Defendants, Appellants and Cross-Respondents.

**FILED**

JUN 11 1991

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Fifth Judicial District,
In and for the County of Beaverhead,
The Honorable Thomas Olson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Vincent Kozakiewicz; Dillon, Montana
        William A. Brolin; Anaconda, Montana

    For Respondent:

        W. Cecil Jones; Dillon, Montana

Submitted on Briefs:    May 16, 1991

Decided:    June 11, 1991

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

The plaintiff, Byron C. Keller, initiated this suit to recover damages for breach of contract, fraud, and breach of the implied covenant of good faith and fair dealing. Defendants counter-claimed to recover damages for breach of contract, fraud, and breach of the implied covenant of good faith and fair dealing. The District Court for the Fifth Judicial District, Beaverhead County, dismissed the fraud claims under statute of limitations defenses. Following trial, the District Court entered judgment for the plaintiff for $26,395.37 for defendant's breach of contract, $10,000.00 for defendant's breach of the covenant of good faith and fair dealing, and $5,000.00 for punitive damages for the breach of the covenant of good faith and fair dealing. The defendants' counterclaims were dismissed on the merits. Defendants appeal and plaintiff cross-appeals. We affirm in part and reverse in part.

The issues are:

(1) Was the contract between the Doolings and the Kellers correctly interpreted by the District Court and the jury?

(2) Was the Doolings' obligation under the contract extinguished by their offer of performance?

(3) Was evidence of the provisions of an amended contract for deed barred by the parol evidence rule?

(4) Did the District Court err in awarding punitive damages?

(5) Did the District Court err in awarding usurious rates of interest to Mr. Keller?

2

(6) Did the District Court err in allowing the Doolings to amend their answer at trial to raise a statute of limitations defense?

The plaintiff, Byron C. Keller, and his ex-wife, Karen R. Keller, entered into a contract with Thomas Dooling and his ex-wife, Margaret L. Dooling dated January 13, 1976. Kellers agreed to sell to Doolings a tract of land located in Beaverhead County, Montana, consisting of approximately 96 acres. The parties agreed to have the property surveyed and to determine a final price of $1,000.00 per acre for each acre described in the survey.

The 1976 contract called for the Doolings to make an initial down payment of $27,840.00, annual payments in 1977, 1978, and 1979 in the amount of $12,684.12 and a balloon payment in 1980 of the remaining balance. The contract interest rate was 7.5%. Doolings made the initial down payment and the annual payments in 1977, 1978, and 1979.

Prior to the 1980 balloon payment, the property was surveyed and determined to contain 106 acres. The purchase price was thus $106,000.00. The parties negotiated a rescheduling of the balloon payment over a period of four years. The exact nature of the rescheduling was disputed by the parties at trial. The parties agreed that the payments remained at $12,684.12. Mr. Keller contended that in exchange for extending the payment schedule he was to receive interest on the last four annual payments at 13%. Mr. Keller had his attorney draft a 1980 amendment to the 1976

contract incorporating the surveyed legal description, the extension of the payments by four years, and changing the interest rate to 13%.

The 1980 amendment to the 1976 contract was never executed. However, Mr. Dooling drafted an amortization schedule showing the interest payment at 13%, and wrote several letters indicating the amount he owed in 1984 and the interest rate at 13%. The final payment was not made by Mr. Dooling and this litigation ensued.

I

Was the contract between the Doolings and the Kellers correctly interpreted by the District Court and the jury?

The subject property under the contract for deed between the parties was part of a larger tract of land owned by the Kellers. The Kellers were making payments under a mortgage to Connecticut Mutual Life Insurance Company and a contract for deed to Clark and Geraldine Harshbarger on the larger tract of land. Under the Keller-Dooling contract for deed, the Doolings would pay off their obligation to the Kellers several years before the Kellers would pay off their obligations on the underlying mortgage and Harshbarger contract.

The Doolings assert that the intent under the contract for deed was for the Kellers to provide the Doolings with a warranty deed free of the underlying mortgage and Harshbarger contract obligations at the time that the Doolings made their final payment on the contract for deed. When Kellers failed to produce such a

4

warranty deed, Doolings refused to make the final payment and Kellers sent notices of default.

The relevant language in the Keller-Dooling contract provides:

> (7) The Kellers further agree that prior to the delivery to the Doolings of the warranty deed, they will purchase and deliver to the Doolings an owner's title insurance policy insuring the merchantable title of the Kellers to the property <u>excepting, however, mortgages of record of which the Doolings have been advised</u> and the usual exceptions with respect to easements of public record.

> (8) . . . The Doolings have further been advised of the existence of other interests in this property including a mortgage to Connecticut Mutual Life Insurance Company and an equitable interest in favor of the said Clark and Geraldine Harshbarger. It is understood that the sellers Keller (sic) are primarily liable and <u>will timely discharge these obligations.</u> Should they fail, however, to make the payments to either Connecticut Mutual Life Insurance Company or the Harshbargers, then and in that event the Doolings may at their option make said payments which would constitute a credit to them of the monies owing on this Contract.
> The lien of the mortgage to Connecticut Mutual Life Insurance Company and the equitable interest of the Harshbargers <u>shall not constitute a defect of title</u>. (Emphasis supplied.)

It is clear from this language that the Keller-Dooling contract is subject to the interest of the underlying mortgage and Harshbarger contract. When the language of a contract is clear and unambiguous, the contract does not require the application of the rules of construction and it is the court's duty to enforce the contract as made by the parties. Morning Star Ent., Inc. v. R.H. Grover, Inc. (Mont. 1991), 805 P.2d 553, 556, 48 St.Rep. 112, 113. Under the above quoted language Kellers did not have an obligation to produce a warranty deed free of the underlying obligations and

Doolings breached the contract by not making the final annual payment. We hold that the contract between the Doolings and the Kellers was correctly interpreted by the District Court and the jury.

II

Was the Doolings' obligation under the contract extinguished by their offer of performance?

The Doolings contend that they made a tender of performance in 1984 and that no interest should accrue beyond the date of tender of performance. Nothing in the record establishes that a tender of performance was ever made. On June 13, 1984 Mr. Dooling stated in a letter to the Kellers' attorney:

> Assuming that the final payment is made on June 29, a Friday, which is the 178th day of the year, I owe Byron the sum of $12,429.14 plus 178 days' interest at 13% per year, in the amount of $787.97. (Emphasis supplied.)

On the same day Mr. Dooling wrote a letter to Mr. Keller which stated:

> This letter is formal notice of my intention to prepay the balance of my Contract for Deed with you, on or before July 1, 1984. I had notified you orally of my plans in January, when I made my last payment. According to the amortization schedule which I provided to you some years ago, the principal balance now due on my contract with you is $12,429.14. Assuming that I make the payment on the 29th of June, I will owe you interest for 178 days at 13%, or $787.97. The total payment I expect to make, then, will be $13,217.11 . . . (Emphasis supplied.)

The Doolings cite Lehrkind v. McDonnell (1915), 51 Mont 343, 153 P. 1012, for the proposition that the interest stopped accruing at the time he made his tender of performance. That case stated:

> An unconditional offer in good faith to perform, by the party upon whom the obligation rest, coupled with the ability to perform, if rejected by the other party, is equivalent to full performance and extinguishes the obligations as to the party making the offer.

The Doolings also cite § 28-1-1202(1), MCA, which states in relevant part:

> An offer in writing to pay a particular sum of money . . . is, if not accepted, equivalent to the actual production and tender of the money . . .

Mr. Dooling's statements were statements of what he might do in the future. These statements do not rise to the level required to make an <u>unconditional</u> tender of performance that triggers the <u>Lehrkind</u> rule or constitute an offer to pay under § 28-1-1202(1), MCA.

We hold that the Doolings failed to prove that they made an unconditional tender of performance or offer to pay and therefore their obligation under the contract was not extinguished.

III

Was evidence of the provisions of an amended contract for deed barred by the parol evidence rule?

The critical documents establishing the amended contract for deed, the interest rate in that amended contract for deed and the payment schedule of that amended contract for deed were admitted without objection from the Doolings. This Court will not consider for the first time on appeal an issue which was not raised in the District Court. In Re the Marriage of Merriman (Mont. 1991), 807 P.2d 1351, 1354, 48 St.Rep. 275, 276.

7

IV

Did the District Court err in awarding punitive damages?

Applying the law as set forth in Nicholson v. United Pac. Ins. (1985), 219 Mont. 32, 710 P.2d 1342, the District Court awarded $5,000.00 in punitive damages for the tortious breach of the implied covenant of good faith and fair dealing. Subsequent to the District Court's award this Court held in Story v. City of Bozeman (Mont. 1990), 242 Mont. 436, 450-51, 791 P.2d 767, 776, that absent a special relationship, tort damages are not available for breach of the implied covenant of good faith and fair dealing in common contract actions. Also see Mann Farms, Inc. v. Traders State Bank (Mont. 1990), 801 P.2d 73, 76. Under Story and Mann Farms it was improper for the District Court to award punitive damages for breach of the implied covenant of good faith and fair dealing. We reverse and vacate that portion of the District Court's award ($5,000.00) that represents punitive damages.

V

Did the District Court err in awarding usurious rates of interest to Mr. Keller?

The Doolings argue that the $26,395.37 awarded by the jury to Mr. Keller by necessity included a usurious 13% rate of compounded interest. There is evidence in the record to support the conclusion that Doolings agreed to pay 13% interest in return for the Kellers' waiver of the balloon payment requirement. The question of compounding interest on the taxes and payments was not

8

objected to by the Doolings at the time the relevant documents were introduced at trial. The Doolings had the opportunity to argue their position to the jury regarding the compounding of interest and to the nature of the agreements. The Doolings did not ask the Court to have the jury break out how they computed their damage award in the verdict form. Mr. Dooling cannot now ask this Court to speculate how the jury broke out the damage award and what it relied on. We hold that Doolings did not establish that the District Court erred in awarding usurious rates of interest to Mr. Keller.

## VI

Did the District Court err in allowing the Doolings to amend their answer at trial to raise a statute of limitations defense to Mr. Keller's fraud claim?

At the end of trial, the District Court allowed the Doolings to amend their answer to raise a statute of limitations defense to Mr. Keller's fraud claim. The District Court then dismissed the claim. On cross-appeal Mr. Keller seeks to have this Court order the District Court to reinstate his fraud claim.

Mr. Keller argues that under Rule 8(c), M.R.Civ.P., the Doolings had waived their statute of limitations defense. Rule 8(c) provides that affirmative defenses shall be set forth in the pleadings. However Rule 8(c) does not preclude the District Court from allowing the parties to amend the pleadings to conform to the evidence under Rule 15(b), M.R.Civ.P. See Butte Teachers' Union

v. Bd. of Trustees (1982), 201 Mont. 482, 487, 655 P.2d 146, 149. We hold that the District Court did not err in allowing the Doolings to amend their answer at trial to raise a statute of limitations defense to Keller's fraud claim.

We reduce the judgment $5,000.00 for punitive damages, and otherwise affirm the District Court.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

10