NO. 93-071

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

CONSOLIDATED MINERALS CORPORATION,
a Montana corporation: and ROBERT
DECKER, SR., an individual,

     Plaintiffs and Respondents,

  v.

MADISON GOLD MINES, INC., a Montana
corporation; and JEFFERSON MINING
LIMITED, a Montana corporation,

     Defendants and Appellants.

FILED

DEC 22 1993

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fifth Judicial District,
              In and for the County of Madison,
              The Honorable Frank M. Davis, Judge presiding.

COUNSEL OF RECORD:

     For Appellants:

        Gregory A. Jackson, Jackson & Rice,
        Helena, Montana

     For Respondents:

        Mark David Hoffman, Jones, Hoffman & Suenram,
        Virginia City, Montana

                 Submitted on Briefs:  November 10, 1993

                         Decided:  December 22, 1993

Filed:

                               Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Consolidated Minerals Corporation and Robert Decker, Sr., filed a complaint in the District Court for the Fifth Judicial District in Madison County against Madison Gold Mines, Inc., and Jefferson Mining Limited, in which they sought payment of royalties and damages for an alleged breach of a lease agreement. Madison Gold Mines and Jefferson Mining responded by filing a complaint against Consolidated Minerals and Decker in which they sought specific performance of the lease agreement, damages, and a temporary restraining order. The two cases were consolidated and a **nonjury** trial was held on June 30, 1992. In its judgment entered in favor of Consolidated Minerals and Decker, the court terminated the lease agreement between the parties and dismissed the complaint filed by Madison Gold Mines and Jefferson Mining. Madison Gold Mines and Jefferson Mining appeal.

We reverse and remand with instructions.

The issues on appeal are restated as follows:

1. Did the District Court err when it found that Madison Gold Mines and Jefferson Mining were in default of the lease agreement?

2. Did the District Court err when, based on its findings of default, it terminated the lease agreement and failed to specifically enforce the default clause of the agreement?

Robert Decker, whose family corporation, Consolidated Minerals Corporation (CMC), owns the Freida Marie mine near Silver Star, Montana, became acquainted with William Cooper and Kevin Pierce in

2

1986 when they were all employed by **Atlantic-LeaCo,** a now defunct mining company. After **Atlantic-LeaCo** ceased business, Decker, Cooper, and Pierce decided to undertake their own mining venture.

Those three individuals, along with Jerry Lorbeck, who financed the parties' mining operation, formed two corporations-- Madison Gold Mines (MGM) and Jefferson Mining (JM). The intent was that JM would own the equipment, and MGM would own the property involved in their mining venture. The two corporations had interlocking officers and boards of directors. Decker held the positions of executive vice president and board member of both corporations. Additionally, Decker was a director and president of CMC.

The parties began mining Decker's Freida Marie mine in late 1986 with the hope of striking ore in order to generate cash flow for the two corporations. Several other individuals worked at the mine site without pay, providing labor, services, equipment, and materials, with the understanding that if the mine developed and was profitable, they would share in the profits. Although the parties discussed having CMC lease the Freida Marie mine to MGM, no agreement had been entered into at the time they struck what was thought to be a valuable vein of gold on April 18, 1987. Approximately six tons of ore were hauled out of the mine that day and were stockpiled at the mine site.

Two days later, on April 20, 1987, the parties entered into a formal lease for the Freida Marie mine site. The written agreement was based upon a form lease previously drafted for Decker and

utilized by him in other dealings. Although there is conflicting testimony regarding whether changes were made in the form provided by Decker and typed by Cooper, none of the parties have contested the validity or content of the executed agreement in their complaints.

Because the complaints filed by both parties involve alleged defaults or breaches of the lease agreement, the key provisions of the agreement will be summarized. The agreement states that the lease was entered into for the purpose of "exploring and prospecting for, developing and mining . . . minerals of all kinds" from the Freida Marie site "continuing for such time as deemed profitable by Lessee or until terminated as provided herein." A work commitment provision was included which states that "[l]essee [MGM] agrees to expend at least Fifty Thousand dollars ($50,000) on exploration and development work within the first Ten (10) years of this Lease."

Paragraph 3 of the lease requires MGM to pay a minimum royalty to CMC and Decker as follows:

> When production is commenced, regardless of the amount of production, Lessee shall pay to Lessors a minimum monthly royalty payable on the first day of each calendar month following the commencement of production of the value of 1/4 ounce of Au. [gold] per month at that time, during the Lease term, unless this Agreement is terminated as hereinafter provided . . . . [Emphasis added].

Paragraph 4 requires additional royalty payments "upon all minerals and values mined, produced, saved, sold, in whatever form . . . as a percentage of the net smelter return (NSR). NSR is

4

defined as the amount of revenue payable to MGM by any smelter or other purchaser of concentrates, ores, minerals, metals, or by-products mined or produced from the Freida Marie.

The other provisions which are relevant to this appeal are Paragraphs 13 and 14, which address termination of the lease and default. Paragraph 13 allows MGM to terminate the lease at any time after five years from the date of the lease, upon ten days notice to CMC. Paragraph 14 provides for termination of the lease by CMC upon a default and failure to cure by MGM. In relevant part, it states as follows:

> The failure of Lessee to keep or perform any obligations on its part to be kept or performed according to the terms and provisions hereof shall, at the election of Lessors, constitute a breach of this Agreement, unless such default be cured as hereinafter provided. . . .
>
> Lessee shall have a reasonable time, which, if the specified default involved only the payment of money, shall be not more than thirty (30) days, and which, in any other case, shall be not more than ninety (90) days, after receipt of such notice within which such specified default or defaults may be cured. If such default or defaults are cured, there shall be no breach hereunder with respect to such default or defaults. . . .
>
> If Lessee shall dispute that a default has occurred, it shall so advise Lessors . . . and the question shall be determined in a court of competent jurisdiction. <u>If decision of the court shall be that Lessee was in default, then it shall have the reasonable time aforesaid after said decision within which to cure the default or defaults before Lessors may terminate this Agreement in the manner aforesaid, and if such default or defaults be cured, there shall be no breach hereunder with respect to the same.</u> [Emphasis added].

Finally, the agreement contains an integration clause which states that it encompasses the parties' entire agreement and understanding, including all prior negotiations and dealings, and

cannot be varied by oral or parol evidence. Furthermore, it states that any modifications to the agreement must be in writing.

After the ore was discovered and the lease signed, the parties ceased mining activities and began construction of a millsite which was to be used for milling the ore removed from the Freida Marie mine. MGM and JM allege that this decision was a joint decision made by Decker, Cooper, Pierce, and Lorbeck, and that Decker was actively involved in the day-to-day activities and decisions of the two corporations. However, Decker claims that the decision to cease mining while the millsite was under construction was made over his objection. Nonetheless, the only activities that appear to have taken place after the lease was signed, other than the construction of the millsite, were Decker's removal of another five to seven tons of ore from the mine, the transportation of the stockpiled ore to the millsite, and the initial processing of some of the ore by running it through a trommel.

Several months later, the parties apparently ran out of the money needed to complete the millsite. On November 5, 1987, Decker sent a notice of default to MGM. Specifically, he claimed that MGM had failed to pay the minimum royalty which was due once production was commenced, it had failed to pay royalties on all minerals and values mined, and it had failed to comply with the work commitment provision of the lease. Decker then resigned as an officer and director of MGM and JM on November 25, 1987. The parties do not dispute that MGM objected to the notice of default in a timely manner pursuant to the terms of the lease. Decker then retook

possession of the Freida Marie in February 1988 and locked it in order to deny MGM access to the leased property.

Thereafter, Decker and CMC filed a complaint in the District Court in June 1988, alleging that MGM and JM had defaulted on the lease agreement. The complaint stated that MGM had failed to pay the required royalties and had "failed to perform in that it did not continue production of the minerals." Decker also sought damages for the corporations' failure to pay him for his services as a professional consultant, and for the unpaid rent on equipment which was in the corporations' possession. The complaint also requested reasonable attorney fees and costs.

In July 1988, MGM filed a complaint against CMC seeking specific performance of the lease agreement and possession of the leased property. It also sought an accounting from CMC for any minerals removed from the Freida Marie, damages incurred due to CMC's possession of the mine, a temporary restraining order, and attorney fees and costs. A hearing was held on August 2, 1988, in response to this complaint but no intermediate relief was granted.

The two causes were consolidated and a nonjury trial was held on June 30, 1992. In findings of fact and conclusions of law issued on November 24, 1992, the court found that the parties had entered into a valid lease agreement. The provisions of the lease were incorporated into the findings. The court also found, in relevant part, the following:

> 8. Both before and following the formal lease, the various entities and individuals conducted mining and milling operations. Ore was removed and stockpiled,

7

perhaps as much as 25 tons. Whether any was ever delivered to a smelter is not clear, probably not. What is certain is that the lessee [MGM] paid no royalty minimum, general or other.

9. In addition to its failure to pay royalties as provided in paragraph 4 of the lease, MGM defaulted in the lease and related agreements. It failed to make agreed investments: it failed to issue its corporate stock to anyone: it failed to continue production at least from June of 1987.

Based on these findings, the court concluded that Decker and CMC were entitled to judgment against MGM and JM. However, rather than award damages to Decker and CMC, the court terminated the April 20, 1987, lease agreement and quieted title to the leased property, all mining equipment owned or furnished by Decker or CMC, and the ore which was stockpiled on the leased property or the millsite. Neither party was awarded damages, attorney fees and costs, or other relief. Additionally, the complaint filed by MGM and JM seeking specific performance of the lease was dismissed. The court's rationale for fashioning this type of equitable remedy was to "restore the parties to their respective positions before the advent of this ill-advised, mining dream."

From this judgment, MGM and JM appeal.

## I.

Did the District Court err when it found that Madison Gold Mines and Jefferson Mining were in default of the lease agreement?

There is no dispute that the parties voluntarily entered into an enforceable agreement and the validity of this agreement was not challenged on appeal. However, after reviewing the contract's provisions and considering the evidence, the District Court found

8

that MGM and JM were in default of the lease agreement in four specific ways.

Appellants MGM and JM contend that the court's findings in this regard are clearly erroneous. They assert that they were not in default of the agreement with regard to royalty payments because production had not yet commenced. Furthermore, they had ten years to make the agreed investments, and the notice of default had been issued only six and one-half months after the lease was signed. Finally, they contend that the lease agreement did not contain provisions regarding issuance of stock or an obligation to "continue production."

This Court will affirm the findings of a trial court sitting without a jury unless the findings are clearly erroneous. Rule 52(a), M.R.Civ.P. *In Interstate Production Credit v. DeSaye* (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287, we adopted a three-part test to determine if the findings are clearly erroneous in a nonjury case: A finding is clearly erroneous if it is not supported by substantial credible evidence, if the court misapprehended the effect of the evidence, or, if after review of the record, this Court is left with a definite and firm conviction that a mistake has been committed.

After a careful review of the record and the provisions of the lease agreement, we conclude that the District Court's findings of default by MGM and JM were clearly erroneous because they were not supported by substantial credible evidence.

9

First, the court found that MGM and JM failed to pay royalties as provided in paragraph 4 of the lease. There is no dispute that no royalties were paid to CMC and Decker. However, it is not clear whether royalty payments were due. Paragraph 3 of the lease requires monthly royalty payments **"[w]hen** production is commenced, regardless of the amount of production." It is not clear from the face of the contract what constitutes "commencement of production" and the court did not make any findings in this regard.

The parties generally agree that the only activities which took place after the lease was signed were the transportation and stockpiling of the **ore at** the **millsite,** and partial construction of the **millsite.** Additionally, Decker testified that he removed another five to seven tons of ore from the Freida Marie after April 20, 1987. The record also demonstrates that some of the ore that was transported to the **millsite** was initially processed by running it through a trommel.

The obligation for MGM to pay royalties is dependent on whether production had commenced. However, it is unclear whether the additional mining by Decker, at that time acting on behalf of MGM and JM, and the transportation, stockpiling, and partial processing of the ore constituted "commencement of production." Because a finding of default for failure to pay the minimum royalty depends on whether production had commenced, we conclude that there was no factual basis for the court's finding that minimum royalty payments were due. We reverse and vacate this portion of the judgment and remand for a determination, based on the evidence in

10

the record, of whether production had "commenced" and whether MGM and JM were, therefore, obligated to pay minimum royalties to Decker and CMC.

Also in regard to royalties, the court found that MGM and JM were in default because they had not made general royalty payments pursuant to Paragraph 4 of the lease. This section requires payment of royalties "as a percentage of the net smelter return" based on payments to MGM by purchasers of any products mined from the Freida Marie mine. The court found that ore had "probably not" been transported to a smelter. Furthermore, there is no evidence in the record demonstrating that any products from the Freida Marie were actually sold to a smelter or other purchaser. Therefore, we conclude that there was not substantial evidence to support a finding that general royalty payments were due.

The court's second finding of default was that MGM and JM had failed to make the investments required by the lease agreement. The work commitment provision of the lease requires MGM and JM to expend at least $50,000 within the first ten years of the lease. Although there was conflicting testimony regarding this clause and whether the parties had discussed requiring an investment of $50,000 within the first year of the agreement rather than in ten years, there is no evidence that the lease had been effectively modified through a written modification to the agreement. Furthermore, the validity of this provision was not challenged and there was no evidence of grounds for invalidating this provision. Therefore, because ten years had not elapsed, we conclude that the

11

court's finding of default in this respect is not supported by the evidence and is clearly erroneous.

Third, the court found that MGM and JM were in default of "other agreements" because of their failure to issue corporate stock. The lease agreement, however, includes no provisions regarding the issuance of stock. Although several of the parties testified that this was the original intent, both the original notice of default and the complaint filed by CMC and Decker were based on allegations of default of the lease agreement. The failure to issue stock, even if separately agreed upon, cannot serve as a basis for default under the lease. Therefore, we conclude that the court erred when it found that MGM and JM were in default for failing to issue stock.

Finally, the court based a finding of default on MGM's failure "to continue production at least from June of 1987." The lease provides that the agreement was entered into for the purpose of exploring, developing, and mining the Freida Marie. However, there are no specific provisions which discuss when production must be commenced or if there is an obligation to continue mining operations after signing the lease.

As already noted, the work commitment clause allows ten years for the lessees to expend $50,000. Decker contends that the failure of MGM to continue actively mining the Freida Marie was contradictory to the purpose of entering into the lease and that his expectation when he agreed to lease the property was that mining would continue and royalties would be paid in exchange for

12

the indefinite leasing of this property to MGM. Decker contends it is unreasonable to believe that he and CMC would agree to a lease where the lessees could potentially "sit on the property for ten years without doing anything."

Other than stating that MGM failed to continue production, the court made no specific findings to justify this statement. Therefore, we conclude that there is insufficient evidence to support the court's finding of default in this regard. However, because the stated purpose of the lease was for the exploration, development, and mining of the Freida Marie mine, a determination of whether there was an implied obligation to actively continue this venture is necessary. Therefore, we remand for a determination by the court of whether, in good faith, MGM and JM were obligated to commence and continue "exploring, developing, and mining" the Freida Marie mine and whether their failure to do so constituted a breach of the lease agreement.

## II.

Did the District Court err when, based on its findings of default, it terminated the lease agreement and failed to specifically enforce the default clause of the agreement?

Although we have reversed and vacated the judgment of the court, we will address this issue briefly for the guidance of the District Court on remand.

Decker and CMC contend that when the court found MGM and JM to be in default of the lease agreement, it impliedly found that this breach of the agreement was a material breach which justified

13

terminating the contract. MGM and JM, however, assert that even if they were in default, they should have been allowed the opportunity to cure as specifically provided for in Paragraph 14 of the lease.

Paragraph 14 provides that if the lessee disputes that a default has occurred, it shall advise the lessor of the dispute and the question will then be determined in a court of competent jurisdiction. It is undisputed that MGM and JM properly objected to Decker's notice of default. The lease then provides that if the court determines that the lessee is in default, there shall be a reasonable time to cure the default. If the default involves the payment of money, the lease requires that it be cured within 30 days, and in any other case, the default shall be cured within 90 days from the time the court'finds a default to have occurred.

The provisions of the contract regarding default and the opportunity to cure are clearly set forth. When a contract is clear and unambiguous, it is a court's duty to enforce the contract as made by the parties. *Lane v. Smith* (1992), 255 Mont. 218, 841 P.2d 1143; *Keller v. Dooling* (1991), 248 Mont. 535, 813 P.2d 437.

We conclude that the court erred when it terminated the contract rather than enforcing the default provisions and allowing MGM and JM the opportunity to cure. Although the court fashioned what it believed was an equitable remedy, the parties had entered into a valid, enforceable contract, and the court was obligated to enforce this contract.

14

Therefore, on remand, if the court determines that MGM and JM are in default of the lease agreement, the lease agreement's provisions should be enforced and the court should allow MGM and JM the opportunity to cure as provided for in Paragraph 14 of the lease.

The judgment of the District Court, with respect to its findings of default and termination of the lease agreement, is reversed and vacated, and this matter is remanded for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

15