No. 96-506
No. 96-507
No. 96-508

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

_____

TRACY AUGUSTINE,

Plaintiff and Appellant,

v.

SUSAN SIMONSON, and FARMERS INSURANCE EXCHANGE,

Defendants and Respondents.

_____

JAY AUGUSTINE as GUARDIAN AD LITEM for CHASE AUGUSTINE,

Plaintiff and Appellant,

v.

SUSAN SIMONSON, and FARMERS INSURANCE EXCHANGE,

Defendants and Respondents.

_____

TRAVIS GRAY,

Plaintiff and Appellant,

v.

SUSAN SIMONSON, and FARMERS INSURANCE EXCHANGE,

Defendants and Respondents.

_____

APPEAL FROM:   District Court of the Eighth Judicial District,
                In and for the County of Cascade,
            The Honorable John Warner, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Channing J. Hartelius (argued); Hartelius, Ferguson,
Baker & Kazda; Great Falls, Montana

For Respondents:

William J. Gregoire (argued) and Robert J. Vermillion;
Smith, Walsh, Clarke & Gregoire; Great Falls, Montana

Submitted: April 1, 1997

Decided: June 24, 1997
Filed:

_____
Clerk

Justice Jim Regnier delivered the opinion of the Court.

Tracy Augustine, Jay Augustine, as guardian ad litem for Chase Augustine, and Travis Gray (collectively referred to herein as "the Augustines") filed three complaints against Susan Simonson and Farmers Insurance Exchange in the Eighth Judicial District Court. The complaints, arising out of an automobile accident, alleged that Simonson was liable for their personal injuries and that Farmers was liable for the damages in excess of the insurance proceeds available from Simonson pursuant to their underinsured motorist (UIM) coverage. On December 20, 1995, at a court-ordered mediation conference, the Augustines settled with Simonson. As a result, each claimant signed a release reserving their underinsured motorist claim against Farmers. The claims against Simonson were dismissed. Farmers filed a Rule 12(b)(6), M.R.Civ.P., motion to dismiss on January 25, 1996, based on the exhaustion clause contained in its UIM policy. The District Court issued an order granting the motion to dismiss on June 24, 1996. The Augustines appeal from this order. We reverse.

The issue on appeal is whether the District Court erred in holding that the exhaustion clause in Farmers' underinsurance policy was a valid contractual provision and thereby granting Farmers' motion to dismiss.

FACTUAL BACKGROUND

On July 28, 1992, a vehicle driven by Susan Simonson rear ended a vehicle driven by Travis Gray. Tracy Augustine, Chase Augustine, and Cole Davison were passengers

in Gray's vehicle. Claims against Simonson and Farmers were made by Travis Gray, Tracy Augustine, and Jay Augustine on behalf of Chase Augustine. Cole Davison was a minor, age nine, at the time of the collision. No claim has been made on Cole's behalf as of this date.

Simonson was insured by an American States insurance policy with an aggregate combined single limit of $100,000. On December 20, 1995, the Augustines settled with Simonson, reserving their claims against Farmers. Travis Gray's claim was settled for $20,000. Tracy Augustine's claim was settled for $16,875, and Chase Augustine's claim was settled for $16,875. Approximately $1,100 was paid for property damage. Therefore, with one potential claim still outstanding, approximately $54,600 has been paid out on the American States policy, leaving approximately $45,400 remaining on the policy limits.

After the settlement, Farmers filed a motion to dismiss pursuant to Rule 12(b)(6), M.R.Civ.P., for failure to state a claim upon which relief could be granted. Farmers asserted that the Augustines failed to comply with the exhaustion clause in their underinsurance policy by entering into settlements which were less than the tort-feasor's policy limits of liability. The District Court heard argument on the motion and ordered supplemental briefing by the parties. On June 20, 1996, the District Court issued an order in which the court recognized public policy reasons for invalidating exhaustion clauses, but declined to hold the clause invalid, reasoning that "it would be unwise to encroach on the legislative function in this area." The Augustines appeal.

                              DISCUSSION

Did the District Court err in holding that the exhaustion clause in Farmers' underinsurance policy was a valid contractual provision and thereby granting Farmers' motion to dismiss?

The District Court's order on the motion to dismiss was based in part upon facts outside of the pleadings. If a court considers matters outside of the pleadings on a Rule 12(b)(6), M.R.Civ.P., motion to dismiss, that motion is constructively converted into a motion for summary judgment regardless of how the order was phrased. See Rule 12(b), M.R.Civ.P.; American Medical Oxygen Co. v. Montana Deaconess Medical Ctr. (1988), 232 Mont. 165, 168, 755 P.2d 37, 39. This Court reviews a district court's grant of summary judgment de novo applying the same evaluation as the district court based on Rule 56, M.R.Civ.P. Motarie v. Northern Montana Joint Refuse Disposal Dist. (1995), 274 Mont. 239, 242, 907 P.2d 154, 156; Bruner v. Yellowstone County (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), M.R.Civ.P.

The interpretation of an insurance contract in Montana is a question of law. Wellcome v. Home Ins. Co. (1993), 257 Mont. 354, 356, 849 P.2d 190, 192. This Court reviews questions of law to determine whether the lower court's application or interpretation of the law is correct. Hollister v. Forsythe (1995), 270 Mont. 91, 93, 889 P.2d 1205, 1206; McGregor v. Madsen (1992), 253 Mont. 210, 212, 832 P.2d 779, 780.

The Augustines argue on appeal that the District Court erred when it determined that they must exhaust the tort-feasor's insurance policy limits in order to make a claim for UIM coverage. They further assert that the term "exhaust" is ambiguous and therefore unenforceable. Farmers argues that the term "exhaust" is not ambiguous and that this Court should not rewrite the insurance policy by declaring the exhaustion clause invalid as violative of public policy.

We have previously held that if a contract's terms are clear and unambiguous, the contract language will be enforced. Youngblood v. American States Ins. Co. (1993), 262 Mont. 391, 395, 866 P.2d 203, 205; Keller v. Dooling (1991), 248 Mont. 535, 539, 813 P.2d 437, 440; 28-3-401, MCA. This Court has further held that the only exception to enforcing an unambiguous contract term is if that term violates public policy or is against good morals. Youngblood, 866 P.2d at 205; Amsterdam Lumber, Inc. v. Dyksterhouse (1978), 179 Mont. 133, 140, 586 P.2d 705, 709; 28-2-701, MCA.

The Farmers policy at issue contains a standard exhaustion clause which provides: "We will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements." We do not find the Augustines' argument persuasive that the term "exhaust" in this clause is ambiguous. We conclude that there is only one reasonable interpretation of the clause in light of its purpose. Leibrand v. National Farmers Union Prop. and Cas. Co. (1995), 272 Mont. 1, 6, 898 P.2d 1220, 1223. The term requires that the insured entirely exhaust the limits of all existing bodily injury liability bonds or policies before he or she is entitled to proceed against the underinsured motorist carrier. We shall, therefore, examine the validity of the clause in light of public policy considerations.

Neither the Montana Legislature nor this Court have specifically addressed the issue of whether an exhaustion clause in an underinsurance policy is enforceable under public policy. This Court has, however, spoken generally as to the purpose of underinsurance. In Sorenson v. Farmers Ins. Exch. (Mont. 1996), 927 P.2d 1002, 53 St. Rep. 1155, we adopted a "no prejudice" rule as a matter of public policy and stated that "[t]he purpose of underinsured motorist insurance is to provide a source of indemnification for accident victims when the tortfeasor does not provide adequate indemnification." Sorenson, 927 P.2d at 1005 (citing State Farm Mut. Auto. Ins. Co. v. Estate of Braun (1990), 243 Mont. 125, 130, 793 P.2d 253, 256). In Sorenson, the plaintiff settled with the tort-feasor and provided a release without obtaining the consent of her own underinsurance carrier. The insurer argued that when she settled and provided

a release without the insurer's consent, she was precluded from receiving her underinsured motorist coverage. In reversing the district court, we held that there was no prejudice to the insurer where the tort-feasor was judgment proof and, consequently, the insured's actions would not compromise the insurer's ability to subrogate. We explained the meaning of this no prejudice rule as "absent some showing of material prejudice to the underinsurance carrier, a claim for underinsured motorist coverage may not be precluded on a technicality." Sorenson, 927 P.2d at 1004.

In its order on the motion to dismiss, the District Court devoted considerable attention to specific public policy reasons for not requiring adherence to exhaustion clauses. The court noted that not requiring the insured to fully exhaust the tort-feasor's insurance serves a dual purpose of discouraging prolonged litigation and promoting early settlements, thereby providing the injured party with the relief when it is most needed. Numerous jurisdictions have agreed that these are important public policy reasons and that exhaustion clauses violate public policy. For instance, Justice Holmes of the Ohio Supreme Court observed:

There are of course a number of considerations which militate in favor of settlement between the underinsured tortfeasor's insurer and the injured party. Obviously, settlement avoids litigation with its attendant expenses and resultant burden upon the legal system. Where the amount of settlement is less than the policy limits, the unpaid amount may well represent the savings in litigation costs for both sides. More importantly, settlement hastens the payment to the injured party who obviously needs compensation soon after the injuries when the medical expenses begin to amass and when the anxiety level is probably quite high. Additionally, there are many situations where litigation would not be a preferred course of action because, while the injuries are certain, there may remain other problems of proof. Thus, the public policy considerations, apart from the contract of the parties, generally favor settlements.

Bogan v. Progressive Cas. Ins. Co. (Ohio 1988), 521 N.E.2d 447, 451, modified in part on other grounds, McDonald v. Republic-Franklin Ins. Co. (Ohio 1989), 543 N.E.2d 456.

The Supreme Court of Nevada also determined that exhaustion clauses violate public policy because they unnecessarily promote litigation costs, increase the number of trials, and unreasonably delay the recovery of underinsured motorist benefits. Specifically, these cases point out that an insured may have valid reasons for accepting less than the tortfeasor's policy limit, that an "underinsured motorist carrier" can compute its payments to the insured as if the insured had exhausted the tortfeasor's policy limit, and that if an "exhaustion clause" is in effect, the tortfeasor's carrier can force the plaintiff to go to trial by offering less than the tortfeasor's policy limit, thereby greatly increasing litigation costs and expenses and promoting delay. See Mulholland v. State Farm Mutual Auto Ins. Co., 171 Ill.App.3d 600, 122 Ill.Dec. 657, 527 N.E.2d 29 (1988); Schmidt v. Clothier, 338 N.W.2d 256

(Minn.1983) (superseded by statute);  Longworth v. Van Houten, 223
N.J.Super. 174, 538 A.2d 414 (App.Div.1988);  Hamilton v. Farmers Ins.
Co. of Washington, 107 Wash.2d 721, 733 P.2d 213 (1987).

Mann v. Farmers Ins. Exch. (Nev. 1992), 836 P.2d 620, 621.

In sum, the policy reasons for not enforcing exhaustion clauses include the following rationales.  Exhaustion clauses promote litigation expenses which lessen the insured's net recovery.  The time involved in litigation serves to delay payment of UIM benefits to the insured.  Furthermore, such clauses fail to recognize that the insured may have a legitimate and valid reason for accepting less than the tort-feasor's policy limits, i.e., the cost and risk of litigation and issues of proof. They fail to consider that the underinsured carrier can compute its payments to the insured as if the insured had exhausted the tort-feasor's policy, thereby not prejudicing the UIM carrier. Finally, under an exhaustion clause the tort-feasor's carrier can force the injured party to go to trial by offering less than the policy limits, thereby increasing costs, litigation, and delay.

We conclude that this reasoning is consistent with the public policy of this State. It is also consistent with the purpose of underinsurance, to provide indemnification for accident victims when the tort-feasor does not provide adequate indemnification. Sorenson, 927 P.2d 1002. Furthermore, it is consistent with the declared public policy of this State to encourage settlement and avoid unnecessary litigation. Holmberg v. Strong (1995), 272 Mont. 101, 106, 899 P.2d 1097, 1100. Therefore, we conclude that the provision requiring that the tort-feasor's liability insurance be entirely exhausted as a prerequisite to securing indemnification from the underinsured motorist coverage is contrary to the public policy of the State of Montana and is unenforceable to the extent that it violates public policy.

Jurisdictions which have held exhaustion clauses to be unenforceable as against public policy have resolved the exhaustion requirement using different methods.  Some jurisdictions have held that exhaustion clauses can be fulfilled when the claimant settles with the tort-feasor's insurance company and leaves only a reasonable amount on the table which could be said to represent a savings for both parties as costs of avoided litigation. See, e.g., Bogan, 521 N.E.2d 447; Leuchtenmacher v. Farm Bureau Mut. Ins. Co. (Iowa 1990), 461 N.W.2d 291.  This determination often requires an evidentiary hearing to determine if the amount left on the table does represent a savings for both parties as avoided costs of litigation.  It also requires representative counsel to provide

depositions or testify as to potential litigation costs. This process then requires the lower court to apply a subjective test to determine what comprises a reasonable amount left on the table. This determination becomes even more complex when the factual situation involves multiple claimants, some of whom might have outstanding claims at the time one settlement is reached.

Requiring additional litigation to determine whether an exhaustion clause has been substantially fulfilled would only further frustrate our previously stated public policy of encouraging settlement, and not delaying the payment of claims and increasing the costs and burdens borne by the  insured in obtaining compensation. A more prudent approach, and the one we hereby adopt today, does not prejudice the underinsurance carrier, nor does it place additional burdens of time and litigation costs on insureds seeking to recover on their underinsurance policies.

To prevent unnecessary litigation and yet fulfill the contract made between the insurer and its insured, the insured may proceed to bring his or her claim against their UIM carrier whether or not they have fully exhausted the tort-feasor's insurance policy limits. A claim must first be made with the tort-feasor's insurance company. This claim, however, does not have to be finally disposed of before proceeding against the underinsurer. In the case of an individual claimant, the underinsurance coverage liability then commences only when the insured's damages exceed the stated limit of the tort-feasor's liability insurance, thus making the insured responsible for any gap between the amount of settlement and the tort-feasor's liability limits. The underinsurer shall receive credit, however, for the full amount of the tort-feasor's policy limits.

In a situation where multiple claimants seek to recover the proceeds of a single policy, such as we have here, there are additional considerations. In most instances, the nature and  extent of the injuries suffered by the individual claimants will differ. As a workable solution, we adopt the following procedure. The limits of the tort-feasor's policy shall be divided among the claimants, in an equal pro rata share, for the purpose of considering exhaustion. This share, or the amount of the tort-feasor's insurance actually received by the claimant, whichever is greater, shall then be credited to their individual underinsurers as being the "limits" of the tort-feasor's policy.

We can foresee some instances where the claimant may nevertheless want to proceed to exhaust the policy. In a multiple claim-single limit situation, a claimant may receive a minimal settlement because the other claimants may have comparatively more

serious injuries.  The amount received may be significantly less than the value of the

claim, but  considerably under the pro rata set off.  There is nothing to prevent such a

claimant from fully "exhausting" the policy under traditional methods and then proceeding

against the underinsurer.

In sum, the underinsurer is not prejudiced by allowing a claim for underinsurance

to proceed regardless of whether the tort-feasor's policy limits have not been fully

exhausted because the underinsurer receives a credit for the policy limits.  This procedure

still provides protection to an insurance company against a demand by its insured to fill

the gap after a weak claim has been settled for an unreasonably small amount, yet it

provides prompt payment to the insured and does not lessen the insured's recovery by

requiring him or her to pay additional litigation costs and delay the payment of claims.

Furthermore, this method bypasses the necessity of litigating the determination of whether

a policy has been exhausted by a settlement leaving only a reasonable amount on the table

reflecting saved costs of avoided litigation.

Although we agree with the District Court's statement of public policy, we reverse

the District Court's decision and remand for further proceedings consistent with this opinion.


/S/  JIM REGNIER


We Concur:

/S/  J. A.  TURNAGE
/S/  KARLA M. GRAY
/S/  W. WILLIAM LEAPHART
/S/  JAMES C. NELSON
/S/  WILLIAM E. HUNT, SR.
/S/  TERRY N. TRIEWEILER