No. 98-056

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 85

294 Mont. 134

979 P.2d 188

STEPHEN C. DILL and DEBRA K. DILL, individually

and as guardians for JASON M. DILL, a minor,

Petitioners,

v.

MONTANA THIRTEENTH JUDICIAL DISTRICT COURT,

Honorable G. Todd Baugh, Judge Presiding,

Respondent.

ORIGINAL PROCEEDING


COUNSEL OF RECORD:


For Petitioners:


Patrick R. Sheehy (argued) and R. Russell Plath; Halverson, Sheehy

& Plath, P.C.; Billings, Montana


For Respondent:


Stephen J. Harman (argued) and James E. Roberts;

Brown Law Firm, P.C.; Billings, Montana


For Amicus Curiae:


Patricia O'Brien Cotter (argued); Cotter & Cotter, P.C.;

Great Falls, Montana (for Montana Trial Lawyers Association)

No

Argued: September 8, 1998

Submitted: September 10, 1998

Decided: April 22, 1999

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

**¶1. The Dills, individually and as guardians for their son Jason Dill, brought this action against Casey Jardine, a minor, Casey's parents, and State Farm Mutual Automobile Insurance Company in the District Court for the Thirteenth Judicial District, Yellowstone County, for damages suffered when Jason was hit as a pedestrian by a vehicle operated by Casey Jardine. After the Dills settled all of their claims against the Jardines, State Farm filed a motion in limine seeking to (1) amend the caption of the case to remove State Farm as a named defendant; (2) restrict the Dills from stating or otherwise informing the jury that the Jardines were protected by indemnity insurance; and (3) restrict the mention of the fact that the Dills carry underinsured motorist coverage with State Farm. On December 11, 1997, the District Court granted State Farm's motion in limine. The Dills sought a writ of supervisory control in this matter over the order of the District Court, which this Court granted. We reverse.**

**¶2. The issue presented by the writ of supervisory control is whether the District Court erred when it granted State Farm's motion in limine to restrict the Dills from in any way disclosing to the jury that they are making a claim for underinsured motorist benefits from State Farm.**

## FACTUAL BACKGROUND

¶3. Jason Dill was a fourteen-year-old pedestrian who was hit and severely injured by a vehicle operated by fifteen-year-old Casey Jardine. Jardine's parents owned an auto insurance liability policy with State Farm Mutual Automobile Insurance Company with policy limits of $100,000. In addition, Jason's parents owned three separate policies of auto insurance issued by State Farm, all of which provided underinsured motorist coverage in the amount of $100,000. Jason's parents also owned a personal liability umbrella policy endorsement to their homeowner's policy issued by State Farm that included underinsured motorist coverage with limits of $2.3 million. Jason is a named insured on all of his parents' applicable insurance policies with State Farm.

¶4. After suing the Jardines, the Dills made a demand for underinsured motorist benefits from their insurer, State Farm. State Farm refused to pay underinsured motorist benefits. The Dills, therefore, amended their complaint and added State Farm as a party defendant as required by the State Farm policy. The Dills' four-count amended complaint sought: (1) damages for Jason caused by the negligence of Casey Jardine; (2) damages for Jason for the negligent entrustment of the automobile to Casey Jardine by Jardine's parents; (3) damages for Jason, his parents, and family for negligent infliction of emotional distress; and (4) a breach of contract action by Jason and his parents against State Farm for failing to pay amounts due pursuant to the underinsured motorist provisions of the auto policies and umbrella policy owned by Jason's parents. State Farm did not object to being named as a party defendant.

¶5. After filing the amended complaint, the Dills settled all of their claims against the Jardines for their State Farm liability policy limits of $100,000. The general release executed on the Dills' behalf in favor of the Jardines specifically reserves the Dills' right to sue State Farm for payment of underinsured motorist damages pursuant to the Dills' various policies providing underinsured motorist coverage.

¶6. State Farm waived subrogation rights against their own insureds, the Jardines. State Farm further consented to the Dills settling for the policy limits of the Jardines' liability coverage.

¶7. Shortly thereafter, State Farm filed a motion in limine in the District Court seeking to: (1) amend the caption of this case to remove State Farm as a named defendant; (2) restrict the Dills from stating or otherwise informing the jury that

Jardine was protected by indemnity insurance; and (3) restrict the mention of the fact that the Dills carry underinsured motorist coverage with State Farm. The District Court granted State Farm's motion and held that the Dills' claim against State Farm would not be ripe for adjudication until after Casey Jardine's fault was established and damages assessed in a negligence action. The Dills appeal the District Court's order and request that it be vacated.

## STANDARD OF REVIEW

¶8. The standard of review of discretionary trial court rulings is abuse of discretion. *See May v. First Nat'l Pawn Brokers, Ltd.* (1995), 270 Mont. 132, 134, 890 P.2d 386, 388. In *Montana Rail Link v. Byard* (1993), 260 Mont. 331, 337, 860 P.2d 121, 125, we held that "[t]he standard of abuse of discretion is applied to discretionary rulings, such as trial administration issues, post-trial motions and similar rulings" (citing *Steer, Inc. v. Department of Revenue* (1990), 245 Mont. 470, 474, 803 P.2d 601, 603).

## DISCUSSION

¶9. The issue presented by the Dills in their petition for writ of supervisory control in this case is whether the District Court erred when it granted State Farm's motion in limine to restrict the Dills from in any way disclosing to the jury that they are making a claim for underinsured motorist benefits from State Farm.

¶10. The Dills' argument on appeal addresses the issue presented in several parts. We will address each accordingly.

Contract versus tort action

¶11. In response to the Dills' contention that State Farm breached its contract with them, the District Court's order in limine characterized this case as a tort action rather than as a contract action. The District Court phrased the issue as a tort question of "[w]ho, if anybody, was negligent?" However, Montana law is to the contrary. In *State Farm Mutual Automobile Insurance Co. v. Estate of Braun* (1990), 243 Mont. 125, 793 P.2d 253, State Farm brought suit against its insured, claiming that it had no obligation to pay either uninsured or underinsured motorist benefits. State Farm argued that because the accident occurred in Canada, Canada's wrongful death damage limitation would apply, meaning that Braun's estate was not "legally

entitled to collect" damages pursuant to the State Farm policy. Our analysis of *Braun* began with a clear statement that the issues presented were contract, and not tort issues. We stated:

This case presents a controversy between an insurer and an insured over the interpretation of an insurance contract. As such the dispute sounds in contract and should be resolved by contract law.

. . . .

Respondent also erroneously argues that the Canadian damage limitation shields respondent because it is available to the tort-feasor. In essence, respondent asserts that it is the tort-feasor's alter-ego. However, tort law is relevant only in as far as the fault requirement is concerned. Once an insured demonstrates a legal entitlement to damages, principles of contract law define the coverage afforded by an underinsurance motorist provision.

*Braun*, 243 Mont. at 127-28, 793 P.2d at 254-55 (emphasis added).

¶12. Our holding in *Braun* is consistent with an earlier opinion issued by this Court in an action filed by an insured against State Farm for uninsured motorist benefits. In *State Farm Mutual Automobile Insurance Co. v. Solem* (1981), 191 Mont. 156, 622 P.2d 682, which was decided soon after uninsured coverage became widely available, we stated: "Solem's action against State Farm isn't a tort action; rather it is a contract action." *Solem*, 191 Mont. at 159, 622 P.2d at 684. Because the Dills' action against State Farm is not a tort action but rather a breach of contract action, this dispute must be resolved by contract law.

¶13. Moreover, we agree with the Dills that they were required to file a contract action against State Farm in order to comply with the terms of their insurance contract with State Farm. The insurance contract entered into by the Dills provides that in exchange for a premium, State Farm would issue underinsured motorist coverage to the Dills. The contract provides that if there is an accident between the insured and the driver of an underinsured motor vehicle, then two questions must be decided by agreement between the insured and State Farm:

1. Is the *insured* legally entitled to collect damages from the owner or driver of the *uninsured motor vehicle* or *underinsured motor vehicle*; and

2. If so, in what amount?

The policy further provides that if the parties cannot agree, then they must either arbitrate or litigate these two questions. The policy specifies:

If either party does not consent to arbitrate these questions, the *insured* shall:

a. file a lawsuit in the proper court against the owner or driver of the *uninsured motor vehicle* or *underinsured motor vehicle* <u>and us</u> . . .;

and

. . . .

c. secure a judgment in that action.

(Underlining added.) The following language appears at page 14 of the policy:

THERE IS NO COVERAGE UNTIL THE LIMITS OF LIABILITY OF ALL BODILY INJURY LIABILITY BONDS AND POLICIES THAT APPLY HAVE BEEN USED UP BY PAYMENT OF JUDGMENTS OR SETTLEMENTS.

In *Augustine v. Simonson* (1997), 283 Mont. 259, 267, 940 P.2d 116, 121, however, we concluded that in order to prevent unnecessary litigation "the insured may proceed to bring his or her claim against their UIM carrier whether or not they have fully exhausted the tort-feasor's insurance policy limits." Although a claim must first be made with the tort-feasor's insurance company, the claim does not have to be finally disposed of before proceeding against the underinsurer. *See Augustine,* 283 Mont. at 267, 940 P.2d at 121.

**¶14. Due to the fact that State Farm is both the liability insurer for the Jardines, and the underinsured motorist carrier for the Dills, State Farm has likely been aware from the inception of these proceedings of the Dills' actions to both collect the liability coverage carried by the Jardines, and the underinsured motorist benefits from their own policy.**

**¶15. We have held that when the terms of an insurance contract are clear and unambiguous, the contract language will be enforced. *See Augustine,* 283 Mont. at 263, 940 P.2d at 119. We must give effect to the meaning and intention of the parties as expressed by the language in their contract. *See Marko & Co., LLC v. Deaconess/ Billings Clinic Health System*, 1998 MT 26, ¶ 17, 287 Mont. 293, ¶ 17, 954 P.2d 1116, ¶ 17. The Dills have met all of the conditions precedent contained in their State Farm policy. They sued both the driver and State Farm in one action, as the contract required; they settled their claim against the underinsured driver for policy limits, as the contract required; they obtained State Farm's consent to the settlement; and they reserved their claim against State Farm for underinsured coverage. The State Farm policy requires the insured to file suit against it if the parties are unable to agree that the insured is legally entitled to collect damages in a particular amount. Because the Dills and State Farm could not agree on this question, this litigation follows as the next contractual requirement.**

**¶16. State Farm maintains that the issues of both fault and damages remain to be determined and that these issues must be resolved in a direct tort action against Casey Jardine, the settled tort-feasor. The District Court agreed. However, according to the clear terms of the policy there are no issues of fault for a fact-finder to resolve. As noted above, the only two questions that must be resolved either by agreement between the insured and State Farm, or by arbitration or litigation, are:**

(a) Whether the insured is legally entitled to collect damages from the driver of the underinsured motor vehicle; and

No

(b) If so, in what amount?

Regardless of whether anyone was at fault for the damages caused to the Dills, it is clear by the fact that the Dills received $100,000 from State Farm that they are "entitled to collect damages." The only question remaining, therefore, is what amount the Dills are entitled to collect beyond $100,000.

**¶17. In spite of this, State Farm maintains that it is still entitled to litigate fault as well as damages in its capacity as the underinsured motorist carrier and, thus, that this is a tort action. The policy provides:**

If the *insured* files suit against the owner or driver of the *uninsured motor vehicle* or *underinsured motor vehicle*, we have the right to defend on the issues of the legal liability of and the damages owed by such owner or driver.

In this case, the insureds, the Dills, did file suit against the driver, but that litigation has been settled and a full general release has been given so the underinsured driver, Casey Jardine, is no longer a proper party defendant. Thus, there is no underinsured driver for State Farm to defend. State Farm had the opportunity to litigate fault in this case when it represented Jardine outright. Instead, it settled the issue when it offered the Dills the liability policy limits on Jardine's behalf.

**¶18. The question of whether anyone was at fault and the question of whether the insured is legally entitled to collect damages from the underinsured driver are not the same. One can be legally entitled to collect damages without first proving fault in a court of law--the Dills have done just that. Conversely, an insured could prove fault on the part of the defendant, and yet not be legally entitled to collect damages. The critical point to be noted is that the State Farm policy only requires that the insured show that he or she is legally "entitled to collect damages"--not prove fault. The Dills squarely answered that question in the affirmative when they collected $100,000 from State Farm in its capacity as the Jardines' liability insurance carrier. The common sense reading of the language of the policy leads to the logical conclusion that if one collects damages, one is legally entitled to do so.**

**¶19. Once an insured demonstrates a legal entitlement to damages, principles of contract law define the coverage afforded by an underinsured motorist provision. Tort law is relevant only as far as fault is concerned. State Farm had the opportunity to litigate this case in the tort arena when it represented Casey Jardine as his liability insurer and, in fact, reserved that right in the policy when it stated:**

If the *insured* files suit against the owner or driver of the *uninsured motor vehicle* or *underinsured motor vehicle*, <u>we have the right to defend on the issues of the legal liability of the damages owed by such owner or driver</u>.

(Underlining added.) Underinsured motorist coverage, on the other hand, is first-party coverage which is a carrier's direct promise to its insured to pay the insured for a loss. *See Kratz v. Kratz* (Okla. 1995), 905 P.2d 753, 755. The recovery of the insured is based on the terms of the policy, and so the action is one based on contract law. When State Farm accepted a premium from the Dills for underinsured motorist coverage, it contractually established its own liability for the tort of another. Because the tort-feasor has paid his policy limits and has been released from this action, we conclude that State Farm's contract now dictates the proceedings.

**¶20. There are two insurance policies involved in this case; the Jardines' liability insurance policy with State Farm, and the Dills' underinsured motorist coverage with State Farm. State Farm maintains that the introduction of any evidence of insurance into this action would be reversible error. We conclude, however, that evidence of both policies is admissible at trial.**

<u>Admissibility of the underinsured motorist policy between the Dills and State Farm</u>

**¶21. Rule 411, M.R.Evid., is entitled, "Liability insurance." It provides:**

Evidence that a person was or was not insured against liability is not admissible upon the issue of whether the person acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of <u>insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness</u>.

(Emphasis added). Rule 411, M.R.Evid., by its terms, applies only to liability insurance and therefore does not preclude the admissibility of the underinsured motorist policy between the Dills and State Farm. The Dills' complaint against State Farm is a coverage dispute pursuant to the terms of the State Farm policy, not a negligence action. Therefore, the result here does not contravene the purpose of Rule 411, M.R.Evid., on the admissibility of insurance. The rule only prohibits the introduction of insurance when it is offered for the purpose of showing negligence or liability. Here, the issues to be tried are separate and the rule is not violated. *See Klaudt v. State Farm Mut. Auto. Ins. Co.* (1983), 202 Mont. 247, 253, 658 P.2d 1065, 1068. Accordingly, Rule 411, M.R.Evid., does not preclude the admission into evidence of the underinsured motorist policy.

Admissibility of the liability policy between the Jardines and State Farm

**¶22. Rule 411, M.R.Evid., precludes evidence of liability insurance "upon the issue of whether the person acted negligently or otherwise wrongfully." As explained above, the Dills demonstrated that they are legally entitled to collect damages from the underinsured driver by collecting the limits of his liability coverage from State Farm. Because the policy does not impose upon the insured the obligation to demonstrate the legal liability of the tort-feasor, the State Farm liability policy would not be utilized to demonstrate that the tort-feasor "acted negligently or otherwise wrongfully." As Rule 411, M.R.Evid., allows, the policy would be offered "for another purpose"; to establish that the Dills have complied with the policy terms by settling with the tort-feasor's liability insurer before turning to their own underinsurance carrier for relief. The liability policy is relevant and admissible only to establish the Dills' compliance, and not to establish fault.**

Admissibility of State Farm's settlement for policy limits on the Jardine liability claim

**¶23. The Dills maintain that State Farm's settlement of the underlying liability claim against Jardine is admissible evidence pursuant to Rules 401 and 402, M.R.Evid. They further maintain that it is admissible as impeachment evidence pursuant to Rules 607 and 801(d)(2), M.R.Evid. Because State Farm has stipulated to the fact that State Farm paid the Dills $100,000, the policy limit, on behalf of Casey Jardine, and that it will pay any jury verdict that exceeds that amount up to the policy limit of $2.3 million, we conclude that evidence of State Farm's settlement of the policy limits on Casey Jardine's liability claim need not be brought before the jury. State Farm is bound to its stipulation that it will pay any damages above $100,000 awarded to the**

**Dills by the jury. Likewise, State Farm has admitted that the Dills have settled with the tort-feasor's liability insurance carrier, which is all the information the Dills need to explain their attempt to obtain underinsured motorist benefits. It is not essential that the jury be apprised of the amount actually paid to the Dills on behalf of Casey Jardine. Simple knowledge that the policy limits were paid will suffice.**

**¶24. Accordingly, we reverse the judgment of the District Court and remand this case for a trial between the Dills and State Farm to determine the amount of damages, if any, the Dills are entitled to recover pursuant to their underinsured motorist policy.**

**¶25. Reversed and remanded.**

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ TERRY N. TRIEWEILER

/S/ WILLIAM E. HUNT, SR.

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART