FILED

06/30/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0319

DA 19-0319

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2020 MT 171

KIRK B. REISBECK,

Plaintiff and Appellant,

v.

FARMERS INSURANCE EXCHANGE,

Defendant and Appellee.

| | |
|---|---|
| APPEAL FROM: | District Court of the First Judicial District, In and For the County of Lewis and Clark, Cause No. ADV-2017-696 Honorable Mike Menahan, Presiding Judge |

COUNSEL OF RECORD:

For Appellant:

Dennis P. Conner, Keith D. Marr, James R. Conner, Conner & Marr, PLLP, Great Falls, Montana

For Appellee:

Christopher C. Voigt, Daniela E. Pavuk, Crowley Fleck PLLP, Billings, Montana

Nicholas J. Pagnotta, Alexander Tsomaya, Williams Law Firm, P.C., Missoula, Montana

Submitted on Briefs: November 13, 2019

Decided: June 30, 2020

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1      Kirk B. Reisbeck appeals the January 17, 2019 order of the First Judicial District Court, Lewis and Clark County, granting Farmers Insurance Exchange (Farmers) summary judgment on Reisbeck's claim for underinsured motorist (UIM) benefits.  Upon the District Court's certification as final for purposes of appeal pursuant to M. R. Civ. P. 54(b) and M. R. App. P. 6(6), we address the following issue:

> *Did the District Court err by granting summary judgment in favor of Farmers on Reisbeck's UIM coverage claim?*

¶2      We reverse and remand for further proceedings consistent with this Opinion.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3      In September 2009, Darrell King rear-ended Reisbeck in Helena.  Reisbeck sued King, alleging damages resulting from the injuries he sustained in the accident.  King's insurer at the time of the accident was Progressive Northwestern Insurance Company (Progressive).  King's liability insurance policy limits at the time of the accident were $50,000.

¶4      Reisbeck was insured by Farmers at the time of the accident.  Reisbeck's policy with Farmers included UIM coverage.  The UIM provisions in Reisbeck's policy provided, in relevant part:

> [Farmers] will pay all sums which an insured person is legally entitled to recover as damages from the owner or operator of an UNDERinsured motor vehicle because of bodily injury sustained by the insured person.

.   .   .

2

[Farmers] will pay under this [UIM] coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements.

(Original emphasis omitted.)

¶5 Reisbeck notified Farmers of his lawsuit against King, and asserted that his UIM coverage may be necessary because King's liability policy limits were only $50,000. Farmers refused to pay Reisbeck anything under his UIM coverage. In September 2017, Reisbeck filed a lawsuit against Farmers to recover his UIM benefits.

¶6 In January 2018, Reisbeck's tort lawsuit against King went to trial. King was determined to be liable for the accident, but the jury awarded Reisbeck only $10,000 in damages. Reisbeck moved to set aside the verdict, contending that errors were made that prevented him from receiving a fair trial, and that the jury's damage award was unsupported by the evidence. Before the District Court entered judgment on the verdict, King offered to settle with Reisbeck for $50,000—the policy limits of King's liability coverage with Progressive. In exchange for the policy limits offer, Reisbeck agreed to dismiss his lawsuit against King, and not pursue his pending motion for a new trial or pursue an appeal. Pursuant to the parties' stipulation, the District Court entered the following order:

The parties having so stipulated;

IT IS HEREBY ORDERED that the jury verdict entered on January 26, 2018 is hereby vacated and shall have no further force or legal effect and this action may be dismissed with prejudice having been fully settled upon the merits. Each party to bear their own costs and attorney fees.

3

¶7 After Reisbeck settled his case with King, Farmers moved for summary judgment on Reisbeck's UIM coverage claim in his suit against Farmers. Farmers argued that because Reisbeck had settled with King, Reisbeck's UIM claim against Farmers was barred by the doctrines of issue preclusion and claim preclusion. On January 17, 2019, the District Court granted summary judgment in favor of Farmers on Reisbeck's UIM coverage claim, determining the doctrine of issue preclusion barred Reisbeck from "relitigating the issue of damages."

## STANDARDS OF REVIEW

¶8 We review a district court's summary judgment ruling de novo, using the same standard as the district courts under M. R. Civ. P. 56. *Schweitzer v. City of Whitefish*, 2016 MT 254, ¶ 9, 385 Mont. 142, 383 P.3d 735 (citing *Lorang v. Fortis Ins. Co.*, 2008 MT 252, ¶ 36, 345 Mont. 12, 192 P.3d 186). *See also Modroo v. Nationwide Mut. Fire Ins. Co.*, 2008 MT 275, ¶ 19, 345 Mont. 262, 191 P.3d 389 (citing *Wendell v. State Farm Mut. Auto. Ins. Co.*, 1999 MT 17, ¶ 9, 293 Mont. 140, 974 P.2d 623). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3).

¶9 The party seeking summary judgment has the initial burden of establishing the absence of genuine issues of material fact and entitlement to judgment as a matter of law. *Schweitzer*, ¶ 9. Where the moving party demonstrates no material factual dispute exists,

4

the burden then shifts to the nonmoving party to present specific, material, and substantial evidence, rather than mere conclusory or speculative statements, to raise a genuine issue of material fact. *See Schweitzer*, ¶ 9. "If no genuine issue of material fact exists, then we, like a district court, determine if the moving party is entitled to judgment as a matter of law." *Schweitzer*, ¶ 9.

¶10 A district court's application of the doctrines of issue preclusion or claim preclusion are issues of law which we review de novo for correctness. *Brilz v. Metro. Gen. Ins. Co.*, 2012 MT 184, ¶ 13, 366 Mont. 78, 285 P.3d 494 (citing *Touris v. Flathead Cty.*, 2011 MT 165, ¶ 10, 361 Mont. 172, 258 P.3d 1; *Estate of Eide v. Tabbert*, 272 Mont. 180, 183, 900 P.2d 292, 294-95 (1995)).

¶11 The interpretation of an unambiguous insurance contract presents a question of law which we review de novo for correctness. *Modroo*, ¶ 37 (citing *Wendell*, ¶ 10).

## DISCUSSION

¶12 *Did the District Court err by granting summary judgment in favor of Farmers on Reisbeck's UIM coverage claim?*

¶13 The related common law doctrines of issue preclusion and claim preclusion (also known as collateral estoppel and res judicata, respectively) exist to preclude future litigation of a final judgment. *Denturist Ass'n of Mont. v. State*, 2016 MT 119, ¶ 10, 383 Mont. 391, 372 P.3d 466 (citing *Baltrusch v. Baltrusch*, 2006 MT 51, ¶¶ 15-18, 331 Mont. 281, 130 P.3d 1267). The doctrines share the purposes of "prevent[ing] parties from waging piecemeal, collateral attacks on judgments, thereby upholding the judicial policy that favors a definite end to litigation," and "conserv[ing] judicial resources and

encourag[ing] reliance on adjudication by preventing inconsistent judgments." *Denturist*, ¶ 10 (citing *Baltrusch*, ¶ 15).

¶14    "Although similar, the two doctrines are not the same." *Denturist*, ¶ 10. Issue preclusion "bars the same parties or their privies from relitigating issues in a second suit that is based upon a *different* cause of action." *Denturist*, ¶ 12 (emphasis added). Issue preclusion applies when the following four elements are satisfied:

> (1) The issue decided in the prior adjudication is identical to the issue raised in the action in question;
> (2) There is a final judgment on the merits in the prior adjudication;
> (3) The party against whom preclusion is now asserted was a party or in privity with a party to the prior adjudication; and
> (4) The party against whom preclusion is now asserted was afforded a full and fair opportunity to litigate the issue which may be barred.

*See Denturist*, ¶ 12.  All elements of issue preclusion must be satisfied for the doctrine to apply.  *Gibbs v. Altenhofen*, 2014 MT 200, ¶ 21, 376 Mont. 61, 330 P.3d 458.

¶15    Claim preclusion "bars a second suit involving the same parties or their privies based on the *same* cause of action." *Denturist*, ¶ 11 (emphasis added).  Claim preclusion also bars those issues "that *could* have been litigated in the prior cause of action." *Denturist*, ¶ 11 (emphasis in original).  Claim preclusion exists when the following five elements are satisfied:

> (1) The parties or their privies are the same;
> (2) The subject matter of the present and past actions is the same;
> (3) The issues are the same and relate to the same subject matter;
> (4) The capacities of the parties are the same to the subject matter and issues between them; and
> (5) A final judgment on the merits has been entered.

*Denturist*, ¶ 11. All elements of claim preclusion must be satisfied for the doctrine to apply. *See Schweitzer*, ¶ 19.

¶16    Though not within the context of issue preclusion or claim preclusion, we have expressly rejected the argument that Farmers advances in this case—that an insured's settlement of a claim with a third-party tortfeasor forecloses the insured's UIM claim against his own insurer. *See Farmers Alliance Mut. Ins. Co. v. Holeman*, 1998 MT 155, ¶ 21, 289 Mont. 312, 961 P.2d 114. We held in *Holeman* that an insured's settlement and release of the third-party tortfeasor "does not preclude her from establishing, *in a separate action* against Farmers Alliance, fault and damages on the part of [the third-party tortfeasor]." *Holeman*, ¶ 27 (emphasis added). We have repeatedly held that a claim for UIM benefits is a contract dispute which we recognize as a distinct contractual matter that implicates a different set of facts involving the interpretation of an insurance contract. *See Holeman*, ¶ 21 ("Although we . . . recognize that underinsured motorist coverage is, to an extent, of a derivative nature, we conclude an insurer's liability for underinsured motorist benefits in any given case arises from the terms of the insurance contract, and its contractual relationship with its insured."); *Dill v. Mont. Thirteenth Jud. Dist. Court*, 1999 MT 85, ¶ 19, 294 Mont. 134, 979 P.2d 188 ("Once an insured demonstrates a legal entitlement to damages, principles of contract law define the coverage afforded by an underinsured motorist provision. Tort law is relevant only as far as fault is concerned."); *State Farm Mut. Auto. Ins. Co. v. Estate of Braun*, 243 Mont. 125, 127, 793 P.2d 253, 254 (1990) ("This case presents a controversy between

7

an insurer and an insured over the interpretation of an insurance contract. As such the dispute sounds in contract and should be resolved by contract law.").

¶17 That a contract claim for UIM benefits is wholly distinct and separate from the underlying third-party tort claim is fatal to Farmers' argument as it pertains to both issue preclusion and claim preclusion in this case. Turning first to Farmers' issue preclusion argument, we need look no further than the first element of issue preclusion to conclude that Farmers' argument fails. Issue preclusion requires that the issue decided in the prior adjudication is *identical* to the issue raised in the action in question. *See Denturist*, ¶ 12. Farmers argues that the jury's assessment of damages in the tort action is identical to the issue in the current contract dispute between it and Reisbeck. But such an argument runs directly contrary to our repeated pronouncements, as summarized in *Braun*, that a UIM claim "presents a controversy between an insurer and an insured over the interpretation of an insurance contract" and consequently "should be resolved by contract law." *Braun*, 243 Mont. at 127, 793 P.2d at 254. Obviously, the jury in the tort action did not resolve the damages issue in that action by application of contract law; thus, the damages issue in the tort action cannot be identical to the damages issue in the contract action.

¶18 The infirmity of Farmers' argument is further laid bare by the very terms of its UIM policy with Reisbeck, the interpretation of which provides the basis upon which this dispute is resolved. Even assuming the jury's damage assessment in the tort action was somehow relevant to Reisbeck's UIM claim, it would not be dispositive for purposes of

8

Reisbeck's contract action against Farmers. Reisbeck's UIM policy with Farmers provides:

> [Farmers] will pay under this [UIM] coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgment *or settlements*.

(Emphasis added.)

¶19 In this case, the jury's verdict was vacated, and therefore no judgment was entered, because while Reisbeck's post-trial motions were still pending he exhausted the limits of King's liability policy by payment of a settlement. This is precisely what his policy with Farmers required in order for him to make a claim for UIM benefits.[1]

¶20 Farmers and the Dissent focus on the jury's damage verdict in the tort action, while effectively ignoring the superseding policy limits settlement that Reisbeck obtained from Progressive while his post-trial motions were pending, and while an appeal of any trial error was still available to him. Viewed in that limited context, the Dissent characterizes this as Reisbeck "[taking] full 'opportunity to litigate' his damages arising from the accident, and expend[ing] 'judicial resources' to obtain a judicial 'adjudication' of his damages." Dissent, ¶ 2 (citing *Denturist*, ¶ 10). The Dissent asserts that the "damage issue in this contract case is exactly the same issue Reisbeck tried to a jury verdict in the tort

---

[1] Although Reisbeck exhausted the limits of King's liability coverage by "payment of . . . settlement[]" as required by the policy, we observe that in *Augustine v. Simonson*, 283 Mont. 259, 267, 940 P.2d 116, 121 (1997), we held that "the insured may proceed to bring his or her claim against their UIM carrier whether or not they have fully exhausted the [tortfeasor's] insurance policy limits." Whether Reisbeck was required to exhaust King's liability policy limits in this case is immaterial to our analysis because there is no dispute that he did, in fact, exhaust the policy limits.

9

case against King." Dissent, ¶ 2. If Reisbeck had taken the $10,000 verdict and gone home, this may be a valid point. But this argument ignores the fact that (a) the jury's verdict was vacated by the District Court's order, and (b) Reisbeck secured a policy limits payment by settlement with Progressive, precisely as required by his contract with Farmers. By focusing on the jury's verdict, to the exclusion of the superseding policy limits settlement, Farmers and the Dissent seem to think that King's insurer, Progressive, tendered a settlement five times greater than the jury's verdict out of some sense of corporate noblesse oblige. But it does not take a leap of faith or imagination to conclude that Progressive considered the merits of Reisbeck's post-trial motions and then tendered the policy limits, and agreed to vacate the verdict, in exchange for Reisbeck abandoning these motions. To infer otherwise flies in the face of common sense. A publicly traded insurance company does not stay in business long by voluntarily paying a settlement that is five times the jury's verdict out of the goodness of its heart. Progressive might be progressive, but it isn't stupid.

¶21    If, after the jury's verdict was entered, Reisbeck had rejected Progressive's policy limits offer, and then prevailed with his post-trial motion for a new trial, or secured a new trial on appeal, the jury's verdict would have been vacated and no judgment would have been entered. If Reisbeck then accepted Progressive's policy limits offer after successfully vacating the jury's verdict, it would be absurd to suggest that the vacated jury verdict could somehow preclude Reisbeck's UIM claim, especially when Reisbeck satisfied the terms of his UIM policy by exhausting the policy limits of the tortfeasor's insurance. Reisbeck secured the exact same result in this case: a vacated jury verdict and a policy limits

10

settlement. The outcomes of these two scenarios are factually indistinguishable. Yet if we were to adopt Farmers' position in this case, it would require an insured in Reisbeck's circumstance to *reject* a policy limits settlement offer from a third-party tortfeasor, then proceed through post-trial motions, and possibly an appeal—all the while consuming judicial resources and incurring ever-increasing expenses for both the insured and the third-party tortfeasor—before the insured could then accept the policy limits offer that had been tendered at the outset. In short, such a holding would discourage settlement and promote unnecessary litigation, contrary to our admonition in *Augustine* that it is "the declared public policy of this State to encourage settlement and avoid unnecessary litigation." *Augustine*, 283 Mont. at 266, 940 P.2d at 120.

¶22 Farmers has failed to satisfy the first element of issue preclusion; thus we need not consider—and we make no determination—as to whether the remaining elements are satisfied. *See Gibbs*, ¶ 21. Reisbeck's UIM claim against Farmers is not barred by issue preclusion.

¶23 Our analysis similarly compels the conclusion that Farmers' claim preclusion argument must fail. Claim preclusion requires that the subject matter of the present and past actions be the same. *Denturist*, ¶ 11. The subject matter of Reisbeck's personal injury action against King was whether, and to what extent, King was liable to Reisbeck in tort. The subject matter of Reisbeck's UIM claim against Farmers is whether, and to what extent, Farmers is liable to Reisbeck in contract, pursuant to the terms of his UIM policy. Reisbeck's current dispute with Farmers "sounds in contract and should be resolved by

11

contract law." *Braun*, 243 Mont. at 127, 793 P.2d at 254. The subject matter of the two actions is not the same, and Reisbeck's UIM claim is not barred by claim preclusion.

## CONCLUSION

¶24 Reisbeck's UIM claim is not barred by either the doctrine of issue preclusion or claim preclusion. The District Court erred in granting summary judgment in favor of Farmers. We reverse and remand for further proceedings consistent with this Opinion.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR

Justice Jim Rice, dissenting.

¶25 The central point of the analysis employed throughout the Court's Opinion is our prior recognition that UIM claims are first-party contract actions that differ from third-party tort actions, and our prior determination that an insured's resolution of a third-party tort claim against the tortfeasor does not foreclose, as a matter of law, his UIM contract action against his insurer. *See Farmers Alliance Mut. Ins. Co. v. Holeman*, 1998 MT 155, ¶ 28, 289 Mont. 312, 961 P.2d 114 (insured's release of the tortfeasor "does not place the insured in the position of being no longer legally entitled to recover compensatory damages from the owner or driver of the underinsured motor vehicle and thus bar the [insured] from recovering pursuant to the underinsured motorist provision of the Farmers

12

Alliance policy."). Our holding in *Holeman* rejected the insurer's argument that its contractual liability under the UIM provision was entirely derivative of the tortfeasor's liability, which had been resolved by the insured's settlement for payment of the tortfeasor's liability policy limits. *Holeman*, ¶ 19. With this point, and the authorities cited in support, I have no dispute. I agree that Reisbeck's right to pursue an UIM claim against Farmers was not foreclosed as a matter of law merely by virtue of his settlement with King. However, that is not the dispositive question here, and I believe the Court's analysis does not sufficiently reach the further distinctions at issue. As the Court acknowledges, *Holeman* did not address issue preclusion, but was decided upon contract principles: "[A]n insurer's liability or underinsured motorist benefits in any given case arises from the terms of the insurance contract, and its contractual relationship with its insured." *Holeman*, ¶ 21.

¶26 Unlike the authorities cited in the Opinion, Reisbeck did not merely settle with the tortfeasor. He engaged the courts to litigate his claim for accident damages against the tortfeasor to the entry of a jury verdict. Reisbeck thus took full "opportunity to litigate" his damages arising from the accident, and expended "judicial resources" to obtain a judicial "adjudication" of his damages. *Denturist Ass'n of Mont. v. State*, 2016 MT 119, ¶ 10, 383 Mont. 391, 372 P.3d 466. It is not enough to say that because the damage verdict was entered in a tort action, it cannot be afforded preclusive effect in a contract action. Our precedent unalterably holds that the applicability of issue preclusion is determined, not by the nature of the actions, but whether "*the issue* decided in the prior adjudication is identical to *the issue* raised in the present case[.]" *Adams v. Two Rivers Apts., LLP*, 2019 MT 157,

13

¶ 9, 396 Mont. 315, 444 P.3d 415 (citation omitted) (emphasis added). Here, the issue presented in the two actions is precisely the same: the damages sustained by Reisbeck in the accident. Indeed, we acknowledged this in *Holeman*—which involved the exact same policy provision as the one at issue here—explaining that the burden upon the insured in the <u>contract</u> action "requires that [the insured] demonstrate she was *entitled to compensatory damages from [the tortfeasor]*, not at the time of her claim for underinsured motorist benefits, but *at the time of the accident*." *Holeman*, ¶ 27 (emphasis added). Consequently, the damage issue in this contract case is exactly the same issue Reisbeck tried to a jury verdict in the tort case against King. The Court has given no reason why the *issue* is any different, merely repeating that this case "sounds in contract." Opinion, ¶ 16. Contract litigation generally may well require resolution of legal issues not addressed in a related tort action, but, here, this particular issue—the determination of damages sustained in the accident—was previously adjudicated by the court in that action.

¶27 Perhaps a hypothetical makes this point clearer. If, instead, the jury had returned a one million dollar tort verdict, would the law allow the plaintiff's insurer to require that plaintiff's damage claim be re-tried in the UIM litigation? Courts have held, as I urge here, that the plaintiff's jury verdict in the tort action would have preclusive effect in the contract action, thus avoiding the expenditure of resources for a duplicate adjudication, which issue preclusion is designed to prevent. *See Zirger v. General Accident Ins. Co.*, 676 A.2d 1065 (N.J. 1996) (holding plaintiff who received a $400,000 jury award of damages against tortfeasor in auto accident case could not be compelled to relitigate the damage award

14

against his insurer in the subsequent UIM arbitration proceeding.). Reisbeck relies on the fact that a judgment was not ultimately entered in the tort action here because of the parties' settlement, but that does not eliminate the preclusive effect. We have held that a voluntary dismissal of an action with prejudice constitutes a final judgment on the merits of the issues for purposes of applying preclusion, *Touris v. Flathead County*, 2011 MT 165, ¶ 15, 361 Mont. 172, 258 P.3d 1, a principle that should apply *a fortiori* where the dismissal with prejudice occurs after an opportunity to litigate was pursued through a verdict. And, litigation resulting in entry of a jury verdict upon the expenditure of judicial resources should not be rendered void *ab initio* for purposes of issue preclusion simply because the litigants decide they do not need it anymore.

¶28 Beyond hypotheticals, courts have likewise reached the same conclusion under the scenario at issue here. *See Safeco Ins. Co. v. Laskey*, 985 P.2d 878, 883 (Or. Ct. App. 1999) (insured precluded from recovering underinsured motorist benefits from insurer based on jury's determination in prior third party suit that insured was not entitled to any damages; "it is not innately inequitable to enforce issue preclusion against an insured who has had a full opportunity, and every incentive, to prove liability in third-party litigation, but has failed to do so."); *Brown v. Kassouf*, 558 N.W.2d 161 (Iowa 1997) (jury's determination of apportionment of fault was binding upon subsequent underinsured motorist claim against insurance company); *Nielson v. Spanaway Gen. Med. Clinic, Inc.*, 956 P.2d 312, 317, n. 3 (Wash. 1998) (insured was collaterally estopped from arguing damages in subsequent underinsured motorist action against insurer because of a jury determination of

15

damages in prior third party suit; "[a] plaintiff's dissatisfaction with the amount of damages awarded after a full trial may be the basis of an appeal of the trial court's decision, but is not an 'injustice' that prevents application of the doctrine of collateral estoppel[.]").

¶29    *Girtz v. N.H. Ins. Co.*, 828 P.2d 90 (Wash. Ct. App. 1992), is notable because it rejects the rationales relied upon by the Court here. Patrick and Sue Girtz were injured in automobile accident and sued the tortfeasor, Bonnie Rice, who was insured under an automobile liability policy with $300,000 limits. They obtained a jury verdict of $225,000. The Girtzes settled with Rice and brought an action against their insurer for UIM benefits, alleging "their injuries were far in excess of the sums awarded in the Rice verdict and that they had elected not to appeal as they could not afford to wait out the appeal process before receiving any compensation." *Girtz*, 828 P2d. at 91 (internal quotations omitted). The Girtzes argued the jury verdict did not have preclusive effect in the UIM action because "the recovery they seek under the policy is an action in contract, not tort." *Girtz*, 828 P2d. at 92. The court rejected the argument, stating "[t]he difference in legal basis between the actions is not relevant because any damages in the contract action are controlled by the damages awarded in the tort action; the argument is without merit." *Girtz*, 828 P2d. at 92. Further, the fact that the Girtzes faced difficult litigation choices did not alter the application of issue preclusion.

¶30    All the elements of issue preclusion are satisfied here. The issue is the same; there was a final judgment on the merits in the prior adjudication by the dismissal with prejudice,

16

*Touris*, ¶ 15[1]; the party against whom preclusion is now asserted is Reisbeck, the plaintiff in the prior action; and Reisbeck was afforded a full and fair opportunity to litigate the issue of damages—and availed himself to it—because he litigated that issue in the prior case to a jury verdict. Reisbeck's subsequent settlement with King after the jury returned its verdict does not change the fact that he was allowed to, and did, fully litigate the issue of damages to a verdict.

¶31 Allowing Reisbeck to re-try the issue of damages in the underinsured motorist suit would result in effectively the same trial as the one between Reisbeck and King. Reisbeck would seek to recover from Farmers the same damages as he sought to recover from King. This litigation will give Reisbeck a second bite at the apple and allow him to "piecemeal" attack the jury's findings in the prior litigation. *Baltrusch*, ¶ 15 (internal citations omitted). The Court's decision to the contrary will require duplication of that effort and defeat the purposes of issue preclusion.

¶32 I acknowledge the Court's concern of promoting settlement by discouraging unnecessary litigation, Opinion, ¶ 20, but the law of preclusion likewise saves significant judicial resources that would be wasted in a duplicative adjudication, and promotes an end to litigation. Reisbeck was permitted to utilize the resources of the courts in the manner he

---

[1] I would decline to apply the Restatement (Second) of Judgments, § 13, as Reisbeck advocates, because § 13 is applied when "deciding whether to give preclusive effect to issues resolved in a judgment or order that has *not* been entered as final[.]" *Baltrusch v. Baltrusch*, 2006 MT 51, ¶ 22, 331 Mont. 281, 130 P.3d 1267 (emphasis added).

felt appropriate. He decided to go to trial; he decided to abandon an appeal. He has made his choices, and the law should now hold him to them.

¶33 In response to this Dissent, the Court offers multiple speculations, but tellingly, as explained below, offers no legal authority for its position and, indeed, fails to address our contrary precedent. The Court suggests this Dissent "ignores" the post-trial settlement between Reisbeck and Progressive. Opinion, ¶ 19. However, this Dissent specifically addresses the effect of the settlement, *see* ¶¶ (2 and 3), and concurs that a settlement does not preclude an undersinsured claim as a matter of law. More to the point, it is the Court that ignores both the verdict and our controlling authority regarding the effect of the verdict. Issue preclusion "bars re-litigation of determinative facts that were actually or necessarily decided in a prior action, *even if they were previously decided under a different legal theory*." *Rooney v. City of Cut Bank*, 2012 MT 149, ¶ 17, 365 Mont. 375, 286 P.3d 24 (citing *Rafanelli v. Dale*, 1998 MT 331, ¶¶ 12, 14, 292 Mont. 277, 971 P.2d 371) (emphasis added). Here, the verdict adjudicated the damages sustained by Reisbeck in his accident, and the Court does not dispute, and cannot dispute, that the damages sought in the contract action against Farmers are exactly those same damages. *See Holeman*, ¶ 27.

¶34 Nor does this Dissent assume that Progressive settled for payment of the $50,000 policy limits out of a sense of "corporate noblesse oblige." Opinion, ¶ 19. Progressive could have settled for any number of reasons all its own, but more importantly, it does not matter, and the Court should not decide the case on this point. The real issue is whether

18

the law gives preclusive effect to a verdict that constitutes "determinative facts that were actually or necessarily decided in a prior action[.]" *Rooney*, ¶ 17. It clearly does.

¶35 The Court offers that the circumstances here would have been "indistinguishable" from Reisbeck accepting a policy limits settlement <u>after</u> prevailing on appeal in which the verdict was overturned. Opinion, ¶ 20. Here lies the Court's error under the law: these cases are indeed distinguishable. As the Court's Opinion must acknowledge, issue preclusion affixes only to prior court adjudications of the same issue. Opinion, ¶ 14 (citing *Denturist Assn'n of Mont.*, ¶ 12.) Preclusion is a function of judicial adjudication, and is not negated by settlement by the parties. *See Touris*, ¶ 16 ("[W]hen *Touris I* was dismissed with prejudice on April 21, it became a final judgment for res judicata purposes and applied to *Touris II*. To accept Touris' position would encourage [] duplicative, piecemeal and potentially endless filings[.]"). Consequently, only a subsequent judicial adjudication vacating the verdict upon error would remove the verdict's effect as a "prior adjudication." In contradiction to our precedent, the Court holds that parties can bar application of the law of prior adjudication by their extrajudicial action of settling despite the verdict.

¶36 In so doing, it is telling that the Court offers an expository, and no doubt well-meaning, rationale for its decision, but no law. It offers no legal authority for the position that a post-verdict settlement by the parties negates the preclusive effect of a judicial "adjudication" of damages and bars the application of issue preclusion. *Denturist Ass'n of Mont.*, ¶ 10. Its search for equity amidst an assessment of the parties' motives

19

fails to explain how, under our long-established precedent, the perceived fairness achieved in giving Reisbeck a second chance trumps the application of preclusion. *Touris*, ¶ 15.

¶37  I would affirm the District Court's order.

/S/ JIM RICE

Justice Laurie McKinnon and Justice Beth Baker join in the dissenting Opinion of Justice Rice.

/S/ LAURIE McKINNON
/S/ BETH BAKER